UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LISA RENEE TOWNLEY,

    Plaintiff,

v.                                        Case No: 8:16-cv-1578-T-DNF

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.[1]

## OPINION AND ORDER

Plaintiff, Lisa Renee Townley, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

**A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[1] Nancy A. Berryhill became the Acting Commissioner of the Social Security on January 23, 2017. Pursuant to Fed. R. Civ. P. 25(d)(1), Nancy A. Berryhill is substituted as the defendant in this case.

death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

## B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs*., 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If

the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

Plaintiff filed applications for a period of disability, DIB, and SSI on April 22, 2013, alleging a disability onset date of February 11, 2013. (Tr. 83, 193-200). Plaintiff's applications were denied initially and on reconsideration. (Tr.108-118, 124-28, 133-37). Plaintiff requested a hearing and one was held before Administrative Law Judge Dores D. McDonnel, Sr. ("the ALJ") on December 16, 2014. (Tr. 43-68). On February 10, 2015, the ALJ entered a decision finding that Plaintiff was not disabled. (Tr. 28-38). Plaintiff requested review of this decision and the Appeals Council denied Plaintiff's request on May 25, 2016. (Tr. 3-5). Plaintiff initiated the instant action by Complaint (Doc. 1) on June 15, 2016. The parties having filed memoranda setting forth their respective positions, this case is ripe for review.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 11, 2013, the alleged onset date. (Tr. 30). At step two, the ALJ found that Plaintiff had the following severe impairments: fractures of left leg and left

arm, statu-post open reduction internal fixation. (Tr. 30). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 32).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> lift and carry 25 pounds occasionally and 10 pounds frequently; stand or walk 6 hours and sit 6 hours in an 8-hour workday. She has no limitations in pushing or pulling with hand or foot controls. She has no manipulative, visual, communicative, postural or environmental limitations, except for avoidance of ropes, ladders, scaffolds and unprotected heights. She can hear, understand, learn, remember and carry out simple repetitive work instructions, make basic work decisions, adapt to a work setting, respond appropriately to supervision and can interact appropriately with coworkers, supervisors and the public. She can sustain attention/concentration sufficiently to complete an 8-hour workday and 5-day workweek. She can use public transportation; and, can be aware of common hazards in the workplace and take appropriate precautions 20 C.F.R. 404.1567(b) and 416.967(b).

(Tr. 33). At step four, the ALJ found that Plaintiff had no past relevant work. (Tr. 36).

At step five, the ALJ applied the Grids to find that considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy Plaintiff can perform. (Tr. 37). Specifically, the ALJ applied Grid 202.17, which provides that a claimant with a RFC to perform the full range of light work requires a finding of "not disabled." (Tr. 37). The ALJ explained that the additional limitations contained in Plaintiff's RFC have little or no effect on the occupational base for unskilled light work. (Tr. 37). The ALJ concluded that Plaintiff was not under a disability from February 11, 2013, through the date of the decision. (Tr. 37).

**II.    Analysis**

Plaintiff raises four issues on appeal: (1) whether the ALJ erred at step two by failing to include all of Plaintiff's severe impairments; (2) whether the ALJ erred in his RFC finding; (3) whether the ALJ erred by failing to find that Plaintiff had past relevant work; and (4) whether the ALJ erred by applying the Grids and failing to elicit testimony from a vocational expert at step five. The Court will address each issue in turn.

### A) Whether the ALJ erred at step two by failing to include all of Plaintiff's severe impairments.

Plaintiff argues that the ALJ erred at step two by failing to include as severe impairments conditions relating to her right knee, left knee, right shoulder, and depression and anxiety. Plaintiff contends that her conditions caused more than slight limitations of function and should have been found to be severe impairments at step two. (Doc. 13 p. 8-10).

The Court rejects this argument. According to the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," but only that the ALJ considered the claimant's impairments in combination, whether severe or not. *Heatly v. Comm'r of Soc. Sec.*, 382 F.App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

Here, the ALJ found that Plaintiff had the severe impairment of "fractures of left leg and left arm, status-post open reduction internal fixation," thus satisfying the requirements of step two. The ALJ proceeded in the sequential evaluation process and, as will be discussed below, addressed the conditions Plaintiff alleges the ALJ missed at step two in formulating the RFC. For this reason, the Court finds no reversible error at step two.

### B) Whether the ALJ erred in his RFC finding.

Plaintiff argues that in formulating his RFC finding, the ALJ failed to properly consider Plaintiff's testimony about limitations which were caused by knee and shoulder pain and by her depression and anxiety. (Doc. 13 p. 11). Further, Plaintiff argues that the ALJ erred by failing to include any non-exertional limitation related to Plaintiff's difficulty with concentration. (Doc. 13 p. 12). According to Plaintiff, not only did the ALJ fail to properly evaluate Plaintiff's chronic pain from the multiple physical sources, the ALJ failed to recognize the implications of the pain on her psychological conditions. (Doc. 13 p. 13). Plaintiff also argues that the ALJ improperly engaged in "sit and squirm jurisprudence" by basing his decision on Plaintiff's ability to sit though the administrative hearing without any apparent discomfort and that Plaintiff appeared articulate, coherent, intelligent, personable and demonstrated excellent memory. (Doc. 13 p. 13).

In response, Defendant contends that substantial evidence supports the ALJ's RFC finding that Plaintiff could perform a reduced range of light work. (Doc. 14 p. 5-8). Defendant argues that the ALJ did not engage in "sit and squirm jurisprudence" by basing his RFC finding, in part, on Plaintiff behavior and appearance at the administrative hearing. (Doc. 14 p. 8).

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). The RFC is the most a plaintiff is able to do despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). In determining whether Plaintiff can return to her past relevant work, the ALJ must determine the Plaintiff's RFC using all of the relevant medical and other evidence in the record. *Phillips v. Barnhart*, 357 F.3d 1232,

1238-39 (11th Cir. 2004), 20 C.F.R. §404.1520(e).  An ALJ must consider all of a claimant's mental impairments which are sufficiently severe in combination with all of a claimant's impairments.  *Hurley v. Barnhart*, 385 F. Supp. 2d 1245, 1256 (M.D. Fla. 2005).

In this case, the Court finds that substantial evidence supports the ALJ's RFC determination.  The record shows that on February 15, 2013, Plaintiff was admitted to the hospital with multiple fractures in her left arm and leg. (Tr. 1462).  With surgeries, followed by rehabilitation, her symptoms improved and she was discharged home on March 1, 2013. (Tr. 1112, 1123, 1462-66).  Subsequently, Henry Sagi, M.D., evaluated Plaintiff in March 2013, noting she was doing well four weeks after surgery. (Tr. 1726).  By July, Plaintiff had full range of motion in the left shoulder and elbow with 5/5 motor strength and intact sensation. (Tr. 1722).  Plaintiff had full extension in her left knee but was focally tender in the leg. (Tr. 1722).  Dr. Sagi advised Plaintiff to begin full weight bearing with the left leg. (Tr. 1722).

An MRI of the right shoulder from July 2013 showed an impaction deformity but no evidence of dislocation or detachment. (Tr. 1728).  Plaintiff had some swelling and mild surface tears of the tendons. (Tr. 1728).  Plaintiff was evaluated that month by Kevin Scott, M.D., and reported achiness and shoulder pain when lifting. (Tr. 1739).  She took over-the-counter medication for the pain. (Tr. 1739).  Examination showed full forward flexion and abduction at 180 degrees but with pain. (Tr. 1740).  Dr. Scott recommended a cortisone injection, but Plaintiff declined. (Tr. 1740).

While the objective medical evidence supports that Plaintiff had some pain in her shoulder, the only limitation Plaintiff noted was pain with lifting, and the ALJ already limited Plaintiff to lifting 25 pounds occasionally and 10 pounds frequently. (Tr. 33).  Moreover, the fact that Plaintiff

treated her pain with over-the-counter medication and declined further treatment indicates that her shoulder pain was not as limiting as she alleged and supports the ALJ's RFC finding.

Regarding Plaintiff's other impairments, examination of Plaintiff's back, left upper extremity, and lower extremities in July 2013 was normal. (Tr. 1740). In June 2014, Plaintiff had surgery on her right knee after an MRI showed a radial tear, but several examinations of her knee after surgery were normal, and there is no indication her right knee was causing functional limitations. (Tr. 1735, 1737, 1742, 1745, 1747, 1755). An examination of the left knee in August and October 2014 showed tenderness on palpation, full range of extension, and flexion to 100 degrees with pain. (Tr. 1735, 1737). In October, Plaintiff received injections in her left knee for complaints of intermittent pain. (Tr. 1734). While the objective evidence supports that Plaintiff had pain in her left knee, substantial evidence supports that she was still capable of a reduced range of light work, and Plaintiff has failed to show that the pain caused additional limitations not already accounted for in the RFC.

Additionally, Thomas Peele, M.D., the state agency consultant, reviewed the record in August 2013 and opined that Plaintiff should be able to perform light work with frequent climbing of stairs and ramps and occasional climbing of ladders, ropes, and scaffolds (Tr. 90-91). State agency consultants are highly qualified specialists who are experts in the Social Security disability programs. *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); SSR 96-6p.

Further, substantial evidence supports the ALJ's determination that Plaintiff could understand, learn, remember, and carry out simple repetitive work instructions; make basic work decisions; adapt to a work setting; respond to supervisors, coworkers, and the public; and sustain attention and concentration sufficiently to complete an 8-hour workday. (Tr. 33). The record shows that Between January and October 2014, Plaintiff sought mental health treatment from B.S.

Bedi, M.D. (Tr. 1758-66). In the initial mental status examination, Dr. Bedi indicated Plaintiff had moderate depression and anxiety. (Tr. 1765). Otherwise, Plaintiff's motor behavior was normal, she had a cooperative attitude, her speech and thought content were appropriate, she had no perception issues, she was oriented, she had good memory, and her cognitive functions ranged from good to average. (Tr. 1766). During the remaining evaluations, Dr. Bedi noted Plaintiff had symptoms of depression. (Tr. 1758). However, the mental status examinations documented normal appearance, motor behavior, attitude, behavior, mood, speech, thought content, perception, orientation, and cognitive function. (Tr. 1758-62).

A "diagnosis [ ] is insufficient to establish that a condition caused functional limitations." *Wood v. Astrue*, 2012 WL 834137, *5 (M.D. Fla. Feb. 14, 2012) (citing *Moore v. Barnhart*, 405 F.3d 1207, 1213 n. 6 (11th Cir. 2005)). While the medical record shows that Plaintiff was diagnosed with depression and anxiety, Plaintiff has failed to demonstrate that these conditions caused her to be more functionally limited than found by the ALJ in his RFC determination.

In addition, the Court finds that remand is not appropriate on the basis that the ALJ impermissibly engaged in "sit and squirm jurisprudence." "Sit and squirm jurisprudence" describes when an ALJ denies a claim based on the fact that the claimant did not exhibit at the administrative hearing an index of traits the ALJ, who is not a medical expert, subjectively believed someone with the alleged conditions should exhibit.. *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982). "Sit and squirm jurisprudence has been repeatedly condemned as an improper basis for determining a claimant's disability. *Smith v. Astrue*, 2009 WL 3157639, at * 7 (M.D. Fla. Sept. 25, 2009) (collecting cases). In this case, the ALJ did not discredit Plaintiff or deny her claim solely on her demeanor at the administrative hearing, but considered it as one factor in addition to the evidence described above. *See Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1984)

(providing that an ALJ is not prohibited from considering the claimant's appearance and demeanor during the hearing so long as the ALJ does not impose his observations in lieu of the medical evidence presented). Substantial evidence supported the ALJ's RFC finding. Accordingly, the Court will not disturb the ALJ's findings on appeal.

### C) Whether the ALJ erred by failing to find that Plaintiff had past relevant work.

Plaintiff argues that the ALJ erroneously found that Plaintiff did not have any past relevant work, despite the record showing that Plaintiff had earnings in 14 of 15 years prior to her alleged onset of disability in 2013. (Doc. 13 p. 13-14). As the ALJ proceeded to the fifth step of the sequential evaluation process, the Court finds that any error at step four was harmless.

### D) Whether the ALJ erred by applying the Grids and failing to elicit testimony from a vocational expert at step five.

Plaintiff's argument that the ALJ erred at step five is closely related to her argument that the ALJ erred in formulating the RFC. (Doc. 13 p. 13). Plaintiff the ALJ should have included greater limitations to account for Plaintiff's chronic pain and orthopedic and mental conditions and, if he had done so, then his reliance on the Grids would have been erroneous and he would have had to elicit testimony from a vocational expert. (Doc. 13 p. 13).

The Court rejects this argument. As explained above, substantial evidence supports the ALJ's RFC determination. Plaintiff has failed to make any showing that the ALJ improperly applied the Grids based on the ALJ's RFC finding in the decision.

### III. Conclusion

The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of Section 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 20, 2017.

*[Signature]*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties